**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ORION LABS TECH, LLC, | |
| Plaintiff, | Civil Action No. 1:24-cv-02146 |
| v. | **JURY TRIAL DEMANDED** |
| TALKDESK, INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Orion Labs Tech, LLC ("Orion Labs" or "Plaintiff") files this Complaint against

TalkDesk, Inc. ("TalkDesk" or "Defendant") alleging, based on its own knowledge as to itself and

its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop TalkDesk's infringement of the following

United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and

Trademark Office ("USPTO"):

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 1)  10,110,430 | Intelligent Agent Features For Wearable Personal Communication Nodes | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10110430 |
| 2)  10,462,003 | Intelligent Agent Features For Wearable Personal Communication Nodes | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10462003 |
| 3)  10,897,433 | Bot Group Messaging Using General Voice Libraries | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10897433 |
| 4)  10,924,339 | Intelligent Agent Features For Wearable Personal Communication Nodes | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10924339 |
| 5)  11,127,636 | Bot Group Messaging Using Bot-Specific Voice Libraries | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11127636 |
| 6)  11,258,733 | Transcription Bot For Group Communications | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11258733 |
| 7)  11,328,130 | Translational Bot For Group Communication | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11328130 |

2.      Orion Labs seeks injunctive relief and monetary damages.

## PARTIES

3.      Orion Labs is a limited liability company formed under the laws of Washington with a registered office address located at 16935 SW 108th Ave, Tualatin, Oregon 97062 (Washington County).

4.      Based upon public information, TalkDesk is a corporation organized and existing

under the laws of Delaware.

5.    Based upon public information, TalkDesk lists its Global HQ as being located at 120 Hawthorne Avenue, Palo Alto, California 94301.[1]

6.    Based upon public information, TalkDesk lists 8260 Greensboro Drive, Suite 503, McLean, Virginia 22102 as its "Virginia Office."[2]

7.    Based upon public information, TalkDesk may be served though its registered agent for service, Incorporating Services, Ltd., which is located at 7288 Hanover Green Drive, Suite A, Mechanicsville, Virginia, 23111-1709.

8.    Based upon public information, TalkDesk may also be served though its registered agent for service, Incorporating Services, Ltd., which is located at 3500 S. DuPont Hwy, Dover, Delaware 19901.

9.    On information and belief based upon public information, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States and in the State of Virginia, including in the Eastern District of Virginia, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION AND VENUE

10.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

11.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284-85, among others.  This Court has subject matter jurisdiction of the action

---

[1] *See* https://www.talkdesk.com/about/contacts/ (last visited November 10, 2024).

[2] *See* FN 1; *see also* https://cis.scc.virginia.gov/EntitySearch/Index (last visited November 10, 2024).

under 28 U.S.C. § 1331 and § 1338(a).

12.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because Defendant has maintained established and regular places of business in this District and has committed acts of patent infringement in this District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).

13.    Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

14.    Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this Judicial District, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Virginia and this District; (iii) having an interest in, using or possessing real property in Virginia and this District; and (iv) having and keeping personal property in Virginia and in this District.

15.    Specifically, Defendant intends to do and does business in, has and continues to commit acts of infringement in this District directly, and its employees, agents, and/or contractors located in this District use the products or services accused of infringement.

16.    On information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at a location in this district, including, but not limited to, an office at the following address: 8260 Greensboro Drive, Suite 503, McLean, Virginia 22102, as seen below in **Figure 1**.

# Contact Talkdesk today to start delivering great CX.

# North America.

**USA**

+1 844 332 2859

**Canada**

+1 855 993 3636

**Global HQ**

120 Hawthorne Ave
Palo Alto, CA 94301

**Virginia office**

8260 Greensboro Drive, Suite 503
McLean, VA 22102

**Figure 1:** *Contacts*, TALKDESK, INC. (last visited Nov. 8, 2024),
https://www.talkdesk.com/about/contacts/.

17.     Defendant has and continues to commit acts of infringement from its place of business in this District, including, but not limited to, making, using, selling, offering for sale, and importing of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

18.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.     Based upon public information, Defendant owns, operates, advertises, and/or controls products and services that utilize the Accused Products, as defined below, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

20.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its intelligent digital agents, including but not limited to, including the TalkDesk CX Cloud, TalkDesk's Autopilot virtual agent application, TalkDesk's Copilot virtual agent application, TalkDesk Studio, and TalkDesk's Voice IVR virtual agent application, other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

21.     Defendant advertises that "Talkdesk Autopilot™ (formerly known as Talkdesk Virtual Agent™) Digital is a conversational assistant that delivers customers the answers they need quickly and easily, where and when they want it on digital channels. It provides an effective alternative to support customers in offline or peak hours and delivers a near-human conversational experience to the customer." *See Autopilot Digital: Overview*, TALKDESK, INC. (last updated Oct. 31, 2024), https://support.talkdesk.com/hc/en-us/articles/4411552638619-Autopilot-Digital-Overview ("Autopilot Overview").

22.     Defendant also advertises that "TalkDesk Copilot™ (formerly known as Agent Assist™) is a solution that transcribes call interactions in real time, using Natural Language Understanding (NLU) and Natural Language Processing (NLP). Copilot recognizes the intent, and

automatically provides the agent with recommendations, improving speed to resolution and handling time." *See Release Notes | Talkdesk Copilot*, TALKDESK, INC. (last updated Oct. 22, 2024), https://support.talkdesk.com/hc/en-us/articles/10465518079003-Release-Notes-Talkdesk-Copilot.

23.    Defendant also advertises that "Talkdesk CX Cloud's easy-to-use, drag, and drop IVR (Talkdesk Studio) solution stands apart in managing complex call flows. Studio makes it easy to design, build, and deploy compelling customer journeys with clicks, not code." *See 5 things we love about Talkdesk*, TALKDESK, INC. (Mar. 12, 2021), https://www.talkdesk.com/blog/5-things-love-about-talkdesk/.

24.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products. *See, e.g.*, Autopilot Overview; *Talkdesk Copilot*, TALKDESK, INC., (last visited Nov. 8, 2024), https://support.talkdesk.com/hc/en-us/sections/360009231532-Talkdesk-Agent-Assist; *Talkdesk Studio Guide*, TALKDESK, INC., (last visited Nov. 8, 2024), https://studio.talkdesk.com/docs/talkdesk-studio-intro.

25.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,110,430

26.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

27.    The USPTO duly issued U.S. Patent No. 10,110,430 (hereinafter, the "'430 patent") on December 1, 2016, after full and fair examination of Application No. 15/166,531, which was filed on May 27, 2016, which claims priority to a provisional application, filed on May 27, 2015. *See* '430 Patent.

28.     Orion Labs owns all substantial rights, interest, and title in and to the '430 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

29.     The claims of the '430 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function and operation of managing communication groups and group communication systems.

30.     The written description of the '430 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31.     Defendant has directly infringed infringe one or more claims of the '430 patent by making, using, causing to be used, selling, offering for sale, providing, supplying, distributing, and/or internal and external testing of the TalkDesk CX Cloud and Autopilot Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 5, 13, and 17 of the '430 patent, as detailed in **Exhibit A** (Evidence of Use of Infringement Regarding U.S. Patent No. 10,110,430).

32.     For example, as detailed in Exhibit A, Defendant, using the TalkDesk CX Cloud and Autopilot Accused Products, performs a method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising: receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent; instantiating the intelligent agent

as a virtual assistant communication member node in the communication group; and the instantiated intelligent agent recording and auditing communications among and between the plurality of personal communication member nodes in the communication group.

33.     For example, as detailed in Exhibit A, Defendant, using the TalkDesk CX Cloud and Autopilot Accused Products, performs the method of claim 1 wherein the intelligent agent is instantiated as a virtual assistant communication member node in the communication group by a management system configured to define the communication group based on attribute information transferred to the management system from the plurality of personal communication member nodes in the communication group.

34.     For example, as detailed in Exhibit A, Defendant, using the TalkDesk CX Cloud and Autopilot Accused Products, performs a method of operating a group communication system, comprising: managing a communication group comprising a plurality of personal communication member nodes, wherein each personal communication member node comprises a user node transmitting and receiving communications between the group members; instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and the instantiated intelligent agent recording and auditing communications among and between the plurality of personal communication member nodes in the communication group.

35.     For example, as detailed in Exhibit A, Defendant, using the TalkDesk CX Cloud and Autopilot Accused Products, performs the method of claim 13 wherein communications between the communication group member nodes are encrypted and further wherein the virtual assistant communication member node is securely linked to the communication group.

36.     Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '430 patent.

37.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '430 patent by inducing others to directly infringe the '430 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '430 patent by providing or requiring use of the TalkDesk CX Cloud and Autopilot Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Autopilot Accused Products in a manner that infringes one or more claims of the '430 patent, including, for example, claims 1, 5, 13, and 17 of the '430 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '430 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud and Autopilot Accused Products by others would infringe the '430 patent.

38.     Defendant has also indirectly infringed by contributing to the infringement of the '430 patent.  Defendant has contributed to the direct infringement of the '430 patent by its personnel, contractors, distributors, and customers.  The TalkDesk CX Cloud and Autopilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '430 patent, including, for

example, claims 1, 5, 13, and 17 of the '430 patent.  The special features constitute a material part of the invention of one or more of the claims of the '430 patent and are not staple articles of commerce suitable for substantial non-infringing use.

39.    Defendant had knowledge of the '430 patent at least as of the date when it was notified of the filing of this action.

40.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

41.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

42.    Defendant's direct infringement of one or more claims of the '430 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

43.    Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Orion Labs in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44.    Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Orion Labs has and will continue to suffer this harm by virtue of Defendant's infringement of the '430 patent.  Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology.  The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology.  The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests,

which supports injunctive relief in this case

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,462,003

45.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

46.     The USPTO duly issued U.S. Patent No. 10,462,003 (hereinafter, the "'003 patent") on October 29, 2019, after full and fair examination of Application No. 16/142,314, which was filed on September 26, 2018, which claims priority to the '430 patent.  *See* '003 patent.

47.     Orion Labs owns all substantial rights, interest, and title in and to the '003 patent, including the sole and exclusive right to prosecute this action and enforce the '003 patent against infringers and to collect damages for all relevant times.

48.     The claims of the '003 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of managing communication groups, distributed group communications, and group communication systems.

49.     The written description of the '003 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.     Defendant has directly infringed and continues to infringe one or more claims of the '003 patent by making, using, causing to be used, selling, offering for sale, providing, supplying, distributing, and/or internal and external testing of the TalkDesk CX Cloud and Autopilot Accused Products. For instance, Defendant has directly infringed and continues to infringe, either literally

or under the doctrine of equivalents, at least claims 1, 4, 6, and 15 of the '003 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 10,462,003).

51.    For example, as detailed in <u>Exhibit B</u>, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform a method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising: receiving instructions from at least one of the plurality of personal communication member nodes to: instantiate an intelligent agent; and where to instantiate the intelligent agent; instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and the instantiated intelligent agent performing a service for one or more personal communication member nodes in the communication group.

52.    For example, as detailed in <u>Exhibit B</u>, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform the method of claim 1 wherein the service comprises at least one of the following: recording communications among and between the plurality of personal communication nodes; auditing communications among and between the plurality of personal communication nodes; performing a search; performing audio transcription; and annotating communications.

53.    For example, as detailed in <u>Exhibit B</u>, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform the method of claim 1 wherein the intelligent agent is instantiated as a virtual assistant communication member node in the communication group by a management system configured to define the communication group based on attribute information transferred to the management system from the plurality of personal communication member nodes in the communication group.

54.    For example, as detailed in <u>Exhibit B</u>, Defendant's TalkDesk CX Cloud and Autopilot

Accused Products perform a method of operating a group communication system, comprising: managing a communication group comprising a plurality of personal communication member nodes, wherein each personal communication member node comprises a user node transmitting and receiving communications between the group members; receiving instructions from at least one of the plurality of personal communication member nodes to: instantiate an intelligent agent; and where to instantiate the intelligent agent; instantiating the intelligent agent as a virtual assistant communication member node of the communication group, wherein the virtual assistant communication member node performs recording and auditing services for the communication group member nodes.

55.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '003 patent.

56.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '003 patent by inducing others to directly infringe the '003 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '003 patent by providing or requiring use of the TalkDesk CX Cloud and Autopilot Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Autopilot Accused Products in a manner that infringes one or more claims of the '003 patent, including, for example, claims 1, 4, 6, and 15 of the '003 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; advertising and promoting

the use of the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '003 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud and Autopilot Accused Products by others would infringe the '003 patent.

57.     Defendant has also indirectly infringed by contributing to the infringement of the '003 patent.  Defendant has contributed to the direct infringement of the '003 patent by its personnel, contractors, distributors, and customers.  The TalkDesk CX Cloud and Autopilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '003 patent, including, for example, claims 1, 4, 6, and 15 of the '003 patent.  The special features constitute a material part of the invention of one or more of the claims of the '003 patent and are not staple articles of commerce suitable for substantial non-infringing use.

58.     Defendant had knowledge of the '003 patent at least as of the date when it was notified of the filing of this action.

59.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

60.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

61.     Defendant's direct infringement of one or more claims of the '003 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights

under the patent.

62.　　Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.　Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.　　Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.　Orion Labs has and will continue to suffer this harm by virtue of Defendant's infringement of the '003 patent.　Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology.　The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology.　The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,897,433

64.　　Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

65.　　The USPTO duly issued U.S. Patent No. 10,897,433 (hereinafter, the "'433 patent") on January 19, 2021 after full and fair examination of Application No. 15/936,941, which was filed on March 27, 2018, which claims priority to provisional application No. 62/477,070, filed on March 27, 2017.　*See* '433 patent.

66.　　Orion Labs owns all substantial rights, interest, and title in and to the '433 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

67.　　The claims of the '433 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the operation of previous communication devices and systems by using bot messaging.

68.    The written description of the '433 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69.    Defendant has directly infringed one or more claims of the '433 patent by using, providing, supplying, or distributing the TalkDesk CX Cloud and Copilot Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '433 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 10,897,433).

70.    For example, as detailed in Exhibit C, Defendant's TalkDesk CX Cloud and Copilot Accused Products perform a method comprising: receiving, by a group messaging service configured to manage audio messaging between a plurality of user nodes in a group comprising at least a user node, a second user node, and a bot software application member node, a message from the user node comprising recorded audio and including a request, a user node identifier that identifies the user node, and a group identifier that identifies the group; selecting a selected voice library from a plurality of voice libraries to process the recorded audio, a voice library including both a speech-to-text engine and a natural language unit configured to convert a received message into enhanced text in a format suited to processing by the bot; processing, by the selected voice library, the recorded audio to produce the enhanced text comprising the request; sending, by the

group messaging service, the enhanced text to the bot; receiving, at the group messaging service, a reply from the bot, the reply comprising information indicating completion of the request; and sending, to the user node and the second user node, a group reply indicating completion of the request.

71.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '433 patent.

72.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '433 patent by inducing others to directly infringe the '433 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '433 patent by providing or requiring use of the TalkDesk CX Cloud and Copilot Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Copilot Accused Products in a manner that infringes one or more claims of the '433 patent, including, for example, claim 1 of the '433 patent.  Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '433 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the TalkDesk CX

Cloud and Copilot Accused Products by others would infringe the '433 patent.

73.    Defendant has also indirectly infringed by contributing to the infringement of the '433 patent.  Defendant has contributed to the direct infringement of the '433 patent by its personnel, contractors, distributors, and customers.  The TalkDesk CX Cloud and Copilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '433 patent, including, for example, claim 1 of the '433 patent.  The special features constitute a material part of the invention of one or more of the claims of the '433 patent and are not staple articles of commerce suitable for substantial non-infringing use.

74.    Defendant had knowledge of the '433 patent at least as of the date when it was notified of the filing of this action.

75.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

76.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

77.    Defendant's direct infringement of one or more claims of the '433 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

78.    Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

79.    Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Orion Labs has and will continue to suffer this harm by virtue of Defendant's infringement of the '433 patent.  Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology.  The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology.  The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,924,339

80.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

81.    The USPTO duly issued U.S. Patent No. 10,924,339 (hereinafter, the "'339 patent") on February 16, 2021 after full and fair examination of Application No. 16/665,866 which was filed on October 28, 2019, which claims priority to the '003 patent, which claims priority to the '430 patent.  *See* '339 patent.

82.    Orion Labs owns all substantial rights, interest, and title in and to the '339 patent, including the sole and exclusive right to prosecute this action and enforce the '339 patent against infringers and to collect damages for all relevant times.

83.    The claims of the '339 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of communication groups and personal communication member nodes, distributed group communication applications, and group communication systems.

84.    The written description of the '339 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

85.    Defendant has directly infringed one or more claims of the '339 patent by using, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 4, 6, 15, and 18 of the '742 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 10,924,339).

86.    For example, as detailed in <u>Exhibit D</u>, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform a method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising: receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent; instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and the instantiated intelligent agent transcribing communications among and between the plurality of personal communication member nodes in the communication group.

87.    For example, as detailed in <u>Exhibit D</u>, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform the method of claim 1 wherein the instantiated intelligent agent transcribing communications among and between the plurality of personal communication member nodes comprises one of the following: audio transcription of non-audio communications; or textual transcription of audio communications

88.    For example, as detailed in <u>Exhibit D</u>, Defendant's TalkDesk CX Cloud and Autopilot

Accused Products perform the method of claim 1 wherein the intelligent agent is instantiated as a virtual assistant communication member node in the communication group by a management system configured to define the communication group based on attribute information transferred to the management system from the plurality of personal communication member nodes in the communication group.

89.    For example, as detailed in Exhibit D, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform a method of operating a group communication system, comprising: managing a communication group comprising a plurality of personal communication member nodes, wherein each personal communication member node comprises a user node transmitting and receiving communications between the group members; receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent; instantiating the intelligent agent as a virtual assistant communication member node of the communication group, wherein the virtual assistant communication member node performs transcription services for the communication group member nodes.

90.    For example, as detailed in Exhibit D, Defendant's TalkDesk CX Cloud and Autopilot Accused Products perform the method of claim 15 further comprising storing transcribed communications.

91.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '339 patent.

92.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '339 patent by inducing others to directly infringe the '339 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's

employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '339 patent by providing or requiring use of the TalkDesk CX Cloud and Autopilot Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Autopilot Accused Products in a manner that infringes one or more claims of the '339 patent, including, for example, claims 1, 4, 6, 15, and 18 of the '339 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Autopilot Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '339 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud and Autopilot Accused Products by others would infringe the '339 patent.

93. Defendant has also indirectly infringed by contributing to the infringement of the '339 patent. Defendant has contributed to the direct infringement of the '339 patent by its personnel, contractors, distributors, and customers. The TalkDesk CX Cloud and Autopilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '339 patent, including, for example, claims 1, 4, 6, 15, and 18 of the '339 patent. The special features constitute a material part of the invention of one or more of the claims of the '339 patent and are not staple articles of commerce suitable for substantial non-infringing use.

94.     Defendant had knowledge of the '339 patent at least as of the date when it was notified of the filing of this action.

95.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

96.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

97.     Defendant's direct infringement of one or more claims of the '339 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

98.     Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

99.     Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Orion Labs has and will continue to suffer this harm by virtue of Defendant's infringement of the '339 patent.  Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology.  The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology.  The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,127,636

100.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

101.    The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 11,127,636 (the "'636 patent") on September 21, 2021, after full and fair examination of Application No. 15/937,035, which was filed on March 27, 2018, which claims priority to provisional application No. 62/477,082, which was filed on March 27, 2017.  *See* '636 patent.  A certificate of correction was issued for the '636 patent on February 22, 2022. *See id.*

102.    Orion Labs owns all substantial rights, interest, and title in and to the '636 patent, including the sole and exclusive right to prosecute this action and enforce the '636 patent against infringers and to collect damages for all relevant times.

103.    The claims of the '636 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the operation of previous communication devices and systems by using bot messaging.

104.    The written description of the '636 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

105.    Defendant has directly infringed one or more claims of the '636 patent by using, providing, supplying, or distributing the TalkDesk CX Cloud and Copilot Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 5, and 16-18 of the '636 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,127,636).

106.    For example, as detailed in <u>Exhibit E</u>, Defendant, using the TalkDesk CX Cloud and Copilot Accused Products, performs a method comprising: receiving, by a group messaging service configured to manage messaging between a plurality of user nodes in a group, a message comprising recorded audio and a bot identifier for a bot member of the group, a bot comprising a software application for performing a task over the internet; in response to receiving the message, searching a data structure of the group, maintained by the group messaging service, based on the bot identifier to determine that the bot member is a member of the group; ) in response to determining the bot member is a member of the group, accessing a bot entry in the data structure corresponding to the bot identifier, the bot entry including an indicator of a voice library corresponding to the bot member, voice libraries including a set of processing elements configured to convert an audio message into a target format; selecting which of a plurality of available voice libraries to use to process the recorded audio based on the indicator in the bot entry; processing, by a selected voice library, the recorded audio to produce a modified message in the target format suited to the bot member; and sending, by the group messaging service, the modified message to the bot member.

107.    For example, as detailed in <u>Exhibit E</u>, Defendant, using the TalkDesk CX Cloud and Copilot Accused Products, performs the method of claim 1 further comprising: sending the message, by the group messaging service, to the plurality of user nodes in response to receiving the message.

108.    For example, as detailed in <u>Exhibit E</u>, Defendant's TalkDesk CX Cloud and Copilot Accused Products comprise a computing system, comprising: a storage system comprising program instructions; and a processor, operably coupled to the storage system, which executes the program instructions to operate a group messaging service configured to manage messaging

between a plurality of user nodes in a group, including: receive a message comprising recorded audio and a bot identifier for a bot member of the group, a bot comprising a software application for performing a task over the internet; in response to receiving the message, search a data structure of the group, maintained by the group messaging service, based on the bot identifier to determine that the bot member is a member of the group; in response to determining the bot member is a member of the group, accessing for a bot entry in the data structure corresponding to the bot identifier, the bot entry including an indicator of a voice library corresponding to the bot member, voice libraries including a set of processing elements configured to convert an audio message into a target format; select a selected voice library from a plurality of available voice libraries to use to process the recorded audio based on the indicator in the bot entry; process, by the selected voice library, the encoded recorded audio to produce a modified message in the target format suited to the bot member; and send, by the group messaging service, the modified message to the bot member.

109.    For example, as detailed in Exhibit E, Defendant's TalkDesk CX Cloud and Copilot Accused Products comprise the computing system of claim 16, wherein the processor operates the group messaging service, further including: receive the message as encoded audio; decode the encoded recorded audio to obtain decoded audio; send a request to convert, by a speech-to-text engine of the selected voice library, the decoded audio to decoded text; and send a request to enhance, by a natural language unit of the selected voice library, the decoded text to create enhanced text, wherein enhanced text comprises a command specially formatted for execution by the bot member.

110.    For example, as detailed in Exhibit E, Defendant's TalkDesk CX Cloud and Copilot Accused Products comprise the computing system of claim 16, wherein the processor operates the

group messaging service, further including: send the message to the plurality of user nodes in response to receiving the message.

111.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '636 patent.

112.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '636 patent by inducing others to directly infringe the '636 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '636 patent by providing or requiring use of the TalkDesk CX Cloud and Copilot Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Copilot Accused Products in a manner that infringes one or more claims of the '636 patent, including, for example, claims 1, 5, and 16-18 of the '636 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '636 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud and Copilot Accused Products by others would infringe the '636 patent.

113.    Defendant has also indirectly infringed by contributing to the infringement of the '636

patent.  Defendant has contributed to the direct infringement of the '636 patent by its personnel, contractors, distributors, and customers.  The TalkDesk CX Cloud and Copilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '636 patent, including, for example, claims 1, 5, and 16-18 of the '636 patent.  The special features constitute a material part of the invention of one or more of the claims of the '636 patent and are not staple articles of commerce suitable for substantial non-infringing use.

114.    Defendant had knowledge of the '636 patent at least as of the date when it was notified of the filing of this action.

115.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

116.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

117.    Defendant's direct infringement of one or more claims of the '636 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

118.    Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

119.    Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Orion Labs has and will continue to suffer

this harm by virtue of Defendant's infringement of the '636 patent. Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology. The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology. The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 11,258,733

120.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

121.    The USPTO duly issued U.S. Patent No. 11,258,733 (hereinafter, the "'733 patent") on February 22, 2022, after full and fair examination of Application No. 17/096,200, which was filed on November 12, 2020, and which claims priority to Application No. 16/149,692, filed on October 2, 2018, which claims priority to provisional application No. 62.567,338, which was filed on October 3, 2017. *See* '733 patent.

122.    Orion Labs owns all substantial rights, interest, and title in and to the '733 patent, including the sole and exclusive right to prosecute this action and enforce the '733 patent against infringers and to collect damages for all relevant times.

123.    The claims of the '733 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon audio message transcription to destination services.

124.    The written description of the '733 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

125.    Defendant has directly infringed one or more claims of the '733 patent by making, using, selling, offering for sale, providing, supplying, distributing, and/or internal and external testing the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products.  For instance, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claims 1 and 5 of the '733 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,258,733).

126.    For example, as detailed in Exhibit F, Defendant using the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products, performs a method comprising: operating a group communication service, including: receiving user node communications from and distributing user node communications to members of a communication group, wherein the members comprise a plurality of user nodes; receiving an audio transcription request from a selected user node of the communication group; determining a bot node member of the communication group to launch based on an identifier of the communication group; launching the bot node member to deliver transcribed content messages to a destination service; receiving an audio content message from the one of the plurality of user nodes; and delivering a transcribed content message of the audio content message to the destination service via the bot node member.

127.    For example, as detailed in Exhibit F, Defendant using the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products, performs the method of claim 1 comprising operating the group communication service further includes: delivering a plurality of transcribed audio content messages from a plurality of user nodes of the communication group to the destination service, via the bot node member, for publication on the destination service.

128.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '733 patent.

129.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '733 patent by inducing others to directly infringe the '733 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '733 patent by providing or requiring use of the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products in a manner that infringes one or more claims of the '733 patent, including, for example, claims 1 and 5 of the '733 patent.  Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '733 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products by others would infringe the '733 patent.

130.    Defendant has also indirectly infringed by contributing to the infringement of the '733 patent.  Defendant has contributed to the direct infringement of the '733 patent by its personnel,

contractors, distributors, and customers.  The TalkDesk CX Cloud, TalkDesk Studio, and Voice IVR Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '733 patent, including, for example, claims 1 and 5 of the '733 patent.  The special features constitute a material part of the invention of one or more of the claims of the '733 patent and are not staple articles of commerce suitable for substantial non-infringing use.

131.    Defendant had knowledge of the '733 patent at least as of the date when it was notified of the filing of this action.

132.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

133.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

134.    Defendant's direct infringement of one or more claims of the '733 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

135.    Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

136.    Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Orion Labs has and will continue to suffer this harm by virtue of Defendant's infringement of the '733 patent.  Defendant's actions have

interfered with and will interfere with Orion Labs' ability to license technology. The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology. The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 11,328,130

137.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

138.     The USPTO duly issued U.S. Patent No. 11,328,130 (hereinafter, the "'130 patent") on May 10, 2022 after full and fair examination of Application No. 16/182,474 which was filed on November 6, 2018, which claims priority to provisional application No. 62/582,000, which was filed on November 6, 2017. *See* '130 patent.

139.     Orion Labs owns all substantial rights, interest, and title in and to the '130 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

140.     The claims of the '130 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities improve upon the function, operation, and security of communications devices and networks by providing real-time translation for group communications.

141.     The written description of the '130 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

142.    Defendant has directly infringed one or more claims of the '130 patent by making, using, selling, offering for sale, providing, supplying, distributing, and/or internal and external testing the TalkDesk CX Cloud and Copilot Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '130 patent as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,328,130).

143.    For example, as illustrated in Exhibit G, Defendant, using the TalkDesk CX Cloud and Copilot Accused Products, performs a method comprising: performing, at a remote management server configured for managing group communications between multiple communication devices, a process for providing real-time translation for group communications, including: registering a first communication device with the remote management server, including associating the first communication device with: a first language preference, a primary group communication setting identifying a first set of communication devices, and a secondary group communication setting identifying a second set of communication devices; receiving, from the first communication device, a speech input and a first device identifier for the first communication device; accessing an account log associated with the first communication device based on the first device identifier; determining a plurality of communication devices to distribute the speech input to based on the primary group communications setting from the account log; determining a preferred language associated with each of the plurality of group communication devices; grouping each of the plurality of communication devices into one or more groups based on corresponding preferred languages, each group associated with a separate language; for languages different from the first language preference, translating the speech input into a translated speech input corresponding to

the preferred languages for each of the one or more groups prior to sending the speech input; and sending the translated speech input to each communication device of the one or more groups.

144.    Orion Labs or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '130 patent.

145.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '130 patent by inducing others to directly infringe the '130 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '130 patent by providing or requiring use of the TalkDesk CX Cloud and Copilot Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the TalkDesk CX Cloud and Copilot Accused Products in a manner that infringes one or more claims of the '130 patent, including, for example, claim 1 of the '130 patent.  Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; advertising and promoting the use of the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner; or distributing instructions that guide users to use the TalkDesk CX Cloud and Copilot Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '130 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the TalkDesk CX Cloud and Copilot Accused Products by others would infringe the '130 patent.

146.    Defendant has also indirectly infringed by contributing to the infringement of the '130

patent. Defendant has contributed to the direct infringement of the '130 patent by its personnel, contractors, distributors, and customers. The TalkDesk CX Cloud and Copilot Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '130 patent, including, for example, claim 1 of the '130 patent. The special features constitute a material part of the invention of one or more of the claims of the '130 patent and are not staple articles of commerce suitable for substantial non-infringing use.

147.    Defendant had knowledge of the '130 patent at least as of the date when it was notified of the filing of this action.

148.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Orion Labs' patent rights.

149.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

150.    Defendant's direct infringement of one or more claims of the '130 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Orion Labs' rights under the patent.

151.    Orion Labs has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

152.    Orion Labs has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Orion Labs has and will continue to suffer

this harm by virtue of Defendant's infringement of the '130 patent. Defendant's actions have interfered with and will interfere with Orion Labs' ability to license technology. The balance of hardships favors Orion Labs' ability to commercialize its own ideas and technology. The public interest in allowing Orion Labs to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

153.    Orion Labs hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

154.    Orion Labs requests that the Court find in its favor and against Defendant, and that the Court grant Orion Labs the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the Asserted Patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendant accounts for and pays to Orion Labs all damages to and costs incurred by Orion Labs because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award Orion Labs its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>November 27,</u> 2024                    Respectfully submitted,

By: */s/ William R. Poynter*

William R. Poynter (VSB No. 48672)
**KALEO LEGAL**
4456 Corporation Lane, Suite 135
Virginia Beach, Virginia 23462
Telephone: (757) 238-6383
Facsimile: (757) 304-6175
wpoynter@kaleolegal.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1500 K Street, 2nd Floor
Washington, DC 20005
Telephone: (404) 779-5305
Email: matt@rhmtrial.com

***Attorneys for Plaintiff ORION LABS TECH, LLC***
\* admission *pro hac vice* anticipated